IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BENJAMIN RODRIGUEZ : <br> : <br> v. : <br> : NO. 23-CV-3753 SWR <br> NORTHEAST COMMUNITY CENTER : <br> FOR BEHAVIORAL HEALTH : | |

**O P I N I O N**

SCOTT W. REID                                                      DATE: March 14, 2024
UNITED STATES MAGISTRATE JUDGE

On January 29, 2024, Benjamin Rodriguez filed a First Amended Complaint in this matter, in which he alleges that his former employer, the Northeast Community Center for Behavioral Health ("NECCBH") discriminated against him on the basis of gender and sexual orientation, in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-3(a), and the Pennsylvania Human Relations Act, and also retaliated against him for asserting his rights under those acts.

NECCBH has filed a motion under Fed. R. Civ. Pr. 12(b)(6) to dismiss Rodriguez's First Amended Complaint for failure to state a claim upon which relief can be granted, to which Rodriguez has responded.  For the reasons set forth below, NCCBH's motion will be granted in part and denied in part.

I.      *Factual Background*

Rodriguez worked for NECCBH as a payroll clerk/human resources assistant from August 29, 2022, to on or about November 27, 2022.  *First Amended Complaint* at ¶4.  During all of this time, he was in a 90-day probationary period.  *Id*. at ¶¶ 31-33.

At the time Rodriguez was terminated, his direct supervisor, Monica Keller, gave him a negative performance review. *Id*. at ¶ 32. Rodriguez, however, asserts that his termination was not caused by his job performance, but by discriminatory factors. On October 17, 2022, Monica Keller and NECCBH director Karen Searle met with Rodriguez to tell him that he could no longer use a single-use bathroom which was located in the human resources department. *Id*. at ¶¶ 15-16.

Apparently, a female employee complained that the women in the department did not want Rodriguez using that bathroom, and wanted him to use a male bathroom, since he was male. *Id*. at ¶ 14. Rodriguez told Keller and Searle that "he honestly didn't realize their signage made the bathroom for females only[1] and that he honestly thought it was an employee bathroom." *Id*. at ¶16. He also alleges that he was the only male in the human relations department, and because the bathroom could only be occupied by one person at a time, he did not think his using it would be problematic. *Id*. at ¶ 13.

Rodriguez complained to Keller and Searle that he was uncomfortable with the available public men's bathroom, because it had only a single stall, the door did not lock, and NECCBH clients sometimes waited in the bathroom. *Id.* at ¶ 17. Rodriguez also told Keller and Searle, apparently for the first time, that he was nonbinary/gender nonconforming. He "complained that he wouldn't be having these issues" if NECCBH had gender-neutral bathrooms. *Id*. at ¶ 18. Keller told Rodriguez that, if he was born male, he had to use the men's bathroom. *Id*. at ¶ 19. Rodriguez then stated that "this was a mental health clinic and he didn't expect them to act like this," but Keller did not change her mind. *Id*. at ¶ 20.

---

[1] Rodriguez has not described the signage in his Complaint or in his response to this Motion.

Eventually, Rodriguez asked to be excused from the meeting, and went to talk to Heidi Mack, a NECCBH counselor, about his situation. *Id*. at ¶ 22. After Mack conferred with Searle and NECCBH director David Como, NECCBH agreed to put gender-neutral signage on the bathroom in the human resources department. *Id*. at ¶ 23. According to Rodriguez, he returned to work, but "it was hard because it felt awkward" and when he spoke with Keller there was "a lot of attitude and tension." *Id*. at ¶24.

Rodriguez met with Como and Searle on November 1, 2022. *Id*. at ¶25. He told them that, since he complained about the bathroom, Keller "was treating him differently, including exhibiting aggression and subjecting him to increased scrutiny by monitoring his attendance and whereabouts closely." *Id*. He further asserts that after the bathroom issue, "Defendant began to nitpick him about the time he arrived to work." *Id*. at ¶26.

According to Rodriguez, his female coworkers, Chrissy Cohen, Shandara Anthony, Keisha Benton, Joy Peace-Thomas, Jennifer Roberts and Heidi Mack were treated more favorably in that "they were given a leeway of coming to work 15 minutes after their shift and they were not considered late," whereas he was written up and "spoken to" if he was less than 15 minutes late to work. *Id*. at ¶28.

Rodriguez asserts that his negative performance review on November 27, 2022, and his subsequent termination were "causally connected to the disclosure of his identity and subsequent complaints regarding same." *Id*. at ¶34. Aside from providing the comparators referred to above, he maintains that an inference of discrimination is raised by the temporal proximity of "the disclosure and his complaints regarding same" and his termination. *Id*.

II.     *Relevant Legal Standards*

    A.     *Discrimination on the Basis of Sex under Title VII*

Title VII prohibits an employer from discriminating against an individual on the basis of sex. 42 U.S.C. §2000e-2. This prohibition includes discrimination on the basis of sexual orientation. *Bostock v. Clayton County, Georgia*, -- U.S. --, 140 S. Ct. 1731 (2020); *Angelis v. Philadelphia Housing Authority*, Civ. A. No. 23-460, 2024 WL 643142 at *8 (E.D. Pa. Feb. 15, 2024).

To set forth a *prima facie* case of employment discrimination under Title VII, a plaintiff must adequately plead that (1) they were a member of a protected class; (2) they were qualified for the position at issue; (3) they suffered an adverse employment action; and (4) in the absence of direct evidence of discrimination, the plaintiff must show either that the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination, or that employees outside of the plaintiff's protected class were treated more favorably. *See Burton v Teleflex, Inc.* 707 F.3d 417, 426 (3d Cir. 2013).

As to the fourth factor, if a plaintiff claims that individuals not within the plaintiff's protected class were treated more favorably, the plaintiff must point to specific comparators who were similarly situated. *Fisher v. Catholic Social Serv's of Archdiocese of Philadelphia*, Civ. A. No. 18-4653, 2019 WL 37331633 at *5 (E.D. Pa. Aug. 8, 2019). Relevant factors which guide a court's determination as to whether a comparator was "similarly situated" include the employee's job responsibilities, the identity of the supervisors and decision-makers, and – where the defendant purportedly took the adverse employment conduct on the basis of the plaintiff's misconduct – the nature of the misconduct engaged in. *Id*., *citing Wilcher v. Postmaster General*, 441 F. App'x 879, 882 (3d Cir. 2011).

4

B.     *Dismissal Under Rule 12(b)(6)*

Federal Rule 12(b)(6) permits a defendant to move for dismissal of a claim where a plaintiff has failed to state a claim upon which relief can be granted. The present standard for summary dismissal of a complaint that fails to state a claim was set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Prior to these decisions, a district court could dismiss a complaint for failure to state a claim only if it failed to contain a bare recitation of a claim's legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In *Twombly*, however, the United States Supreme Court decided that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Instead, a court need not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 556 U.S. at 678. Further, a complaint must show – and not merely allege – that the pleader is entitled to relief, by setting forth sufficient factual matter to show that a claim is plausible. *Id*. at 679.

As the Court of Appeals for the Third Circuit has explained:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complainant's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [*Iqbal* at 129 S. Ct.] 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips* [*v. County of Allegheny*], 515 F.3d [224] at 234-5 [3d. Cir. 2008].

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

5

The District Court's "plausibility determination" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*., quoting *Iqbal* at 129 S. Ct. 1949.

Even after *Twombly*, however, a plaintiff is not required to establish the elements of a *prima facie* case in a complaint, but need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Fowler*, at 578 F.3d 213. An evidentiary standard is not a proper measure of whether a complaint fails to state a claim. *Id*. Thus, in *Fowler*, the Third Circuit Court of Appeals reversed the decision of a District Court which dismissed a disability complaint on the basis that the plaintiff would not be able to prove she was disabled: "At the pleading stage, ... Fowler's allegation regarding disability is sufficient." *Id*. at 214.

III.  *Discussion*

    A.  *Count I:  Gender and Sexual Orientation Harassment and Discrimination under Title VII*

In the first count of his First Amended Complaint, Rodriguez asserts that NECCBH "discriminated [against] him and harassed him," and also that he suffered disparate treatment, in violation of Title VII. *First Amended Complaint* at ¶¶ 40, 41 (in this count, Rodriguez refers to "defendants", but NECCBH is the only named defendant in this suit).

In the factual section of the First Amended Complaint, Rodriguez specifies the nature of his claim as follows:

> Mr. Rodriguez, in so disclosing his sexual orientation and in telling Ms. Keller that he didn't expect Defendant to act like this, was opposing a practice that he considered to be discriminatory, namely Defendant discriminating against him on the basis of his protected class, his sexual orientation, by telling him that the gender he was born with determined which bathroom he had to use.

*Id*. at ¶ 21.

6

NECCBH asks the Court to dismiss Rodriguez's Count I. It argues that, since Rodriguez admits that gender-neutral signage was placed on the single-use bathroom in response to his concerns, he has not alleged facts which would show a connection between the alleged gender discrimination and his termination to the standard required by *Iqbal*. It further argues that, given his admission that he was late to work on multiple occasions, Rodriguez has not shown that he was qualified for the job from which he was terminated.

The connection between Rodriguez's gender and his termination is distinctly thin. Rodriguez did not choose to challenge an NECCBH bathroom policy; he reacted to a request that he stop using a bathroom apparently understood by his coworkers to be for females. Initially, the reasons he gave for wanting to use the bathroom had nothing to do with his sex or gender. It could also be noted that his subsequent request for gender neutral signage could equally have been made by a cis-gender male who disliked using the public male bathroom for the same reasons as Rodriguez. Further, since Keller's alleged statement that employees must use the bathroom aligned with their birth sex was shortly followed by a decision to convert the bathroom to gender-neutral,[2] it is not at all clear that there was a discriminatory NECCBH policy to challenge.

Nevertheless, acting with appropriate caution at this early stage of the proceedings, I conclude that Rodriguez has pled facts in this regard adequate to survive a 12(b)(6) motion, even under the *Twombly/Iqbal* standard.

---

[2] Rodriguez does not specify in his First Amended Complaint how soon after his October 17, 2022, conversation with Keller he was informed that gender neutral signage would be placed on the bathroom. Certainly, it was before his November 1, 2022, meeting with Como and Searle.

As to Rodriguez's lateness, he has named six co-workers in his department who he claims were tardier than he but were never reprimanded or disciplined. NECCBH argues that this is inadequate, because Rodriguez has not shown that his comparators were similarly situated in many respects. However, this is more a matter of factual proof than of inadequate pleading.

In *Fisher v. Catholic Social Services*, the Honorable J. Curtis Joyner dismissed a plaintiff's claim of disparate treatment on the basis of race because she did not allege a single example of an employee not of her race receiving favorable treatment, but he did not dismiss her claim of religious discrimination because she named two individuals of a different faith who received more lenient discipline for arguably more serious misfeasance. Civ. A. No. 18-4653, 2019 WL 3731633 at **5-6. Although the *Fisher* defendant argued that the plaintiff had not shown that these employees were similarly situated, Judge Joyner noted "at this stage, we decline to weigh on the severity of Plaintiff's or the identified comparators' misconduct" where an inference of discrimination was reasonable. *Id*. at *6.

Rodriguez, unlike the plaintiff in *Fisher*, specifically alleges that his six named comparators were permitted to be fifteen minutes late to work, but that he was not. This is sufficient at this stage.[3]

---

[3] This is not to say that it will be easy for Rodriguez to prove that he was never as much as 15 minutes late, as he alleges. The Finding of No Probable Cause issued by the Governor's Office under the PHRA found the evidence showed: "Complainant … was hired on August 29, 2022. On September 27, 2022, Complainant informed the manager they had a doctor's appointment on September 30, 2022, and requested the day off. On October 12, 2022, Complainant stated he did not feel well and left at 3:30 p.m. Complainant called out of work on October 13, 2022 and October 14, 2022. On October 17, 2022, Complainant returned 50 minutes late from lunch. On October 24, 2022, Complainant arrived at work 33 minutes late. On October 25, 2022, Complainant was late 17 minutes. On November 1, 2022, Complainant returned one hour late from lunch. On November 14, 2022, Complainant returned 50 minutes late from lunch. On November 22, 2022, Complainant returned 50 minutes late from lunch." *First Amended Complaint* at Exhibit C. However, unless the plaintiff has limited himself to conclusory statements, this Court cannot weigh factual evidence in deciding a 12(b)(6) motion. *Fowler*, *supra*, at 578 F.3d 203, 210-11.

B.     *Count II:  Retaliation Under Title VII*

To survive a motion to dismiss, a plaintiff bringing a Title VII retaliation claim need only plead "facts sufficient to give [a defendant] fair notice of the basis for her retaliation claim." *Pepitone v. Township of Lower Merion*, Civ. A. No. 19-1447, 2019 WL 7020142 at *3 (E.D. Pa. Dec. 19, 2019).  The standard to which NECCBH seeks to hold Rodriguez – that set forth in *Moore v. City of Philadelphia*, 461 F3d 331, 340-41 (3d Cir. 2006) – is a summary judgment standard.  As the Court of Appeals for the Third Circuit instructed in *Fowler*, *supra*, *Twombly* does not mean that a plaintiff must establish the elements of a *prima facie* case in a complaint; he need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements.

It could be questioned whether it is reasonable to view a supervisor's monitoring of the chronic tardiness of a probationary employee as discriminatory "nitpicking" rather than an appropriate exercise of her role.  Nevertheless, Rodriguez has clearly alleged that that he was held to a much stricter standard than other comparable employees, and he has the right to attempt to prove this factual assertion.  Accordingly, NECCBH's motion will be denied as it pertains to Count II.

C.     *Counts III and IV:  PHRA*

Discrimination and retaliation claims under the PHRA are generally interpreted in the same way as Title VII claims.  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016); *Butt v. Philadelphia Housing Authority*, Civ. A. No. 18-4770, 2024 WL 625274 at *4 (E.D. Pa. Feb. 14, 2024).

Accordingly, Rodriguez's Count III, which alleges gender and sexual orientation discrimination under the PHRA, and Count IV, which alleges retaliation under the PHRA, remain in the case for the reasons set forth above regarding Counts I and II.

D. *Punitive Damages*

NECCBH asks this Court to dismiss Rodriguez's claim for punitive damages.  Punitive damages are not available under Title VII.  *Barnes v. Gorman*, 536 U.S. 181, 186-7 (2002). Therefore, although Rodriguez has not specified, it is clear that his request for punitive damages pertains to his PHRA claims, and should be evaluated under Pennsylvania law.

In Pennsylvania, punitive damages may be awarded for conduct that is outrageous because of the defendant's evil motive or his reckless indifference to the rights of others. *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005); *Miller v. Schmid*, Civ. A. No. 22-958, 2024 WL 922757 at *8 (M.D. Pa. Mar. 4, 2024).  They are properly awarded only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct.  *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704 (Pa. 1991); *Miller*, *supra*.

Even accepting all of Rodriguez's factual allegations as true, he has not set forth facts which would indicate that NECCBH engaged in outrageous conduct that would support an award of punitive damages.  Accordingly, NECCBH's motion to dismiss will be granted in this respect.

IV.     *Conclusion*

For the reasons set forth above, NECCBH's Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) will be denied as to Rodriguez's Counts I-IV of his First Amended Complaint, but granted as to his request for punitive damages.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE